1        UNITED STATES BANKRUPTCY COURT
           SOUTHERN DISTRICT OF FLORIDA
2            FORT LAUDERDALE DIVISION
3              Judge John K. Olson
4
5           CASE NO. 11-14250-BKC-JKO
6
7   IN RE:
8   FRIENDSHIP AIRWAYS, INC.
9           Alleged Debtor.
    _____/
10
11
12
13
          ORDER SETTING STATUS CONFERENCE (17)
14
    EXPEDITED MOTION OF THE ALLEGED DEBTOR FOR AN ORDER
15  REQUIRING THE PETITIONING CREDITORS TO FILE A BOND
     PURSUANT TO 11 U.S.C. SEC. 303(e) FILED BY DEBTOR
16              FRIENDSHIP AIRWAYS, INC. (34)
17
18              Thursday, March 10, 2011
19
         The above-entitled cause came on for hearing
20  before the Honorable JOHN K. OLSON, one of the
    Judges of the UNITED STATES BANKRUPTCY COURT in and
21  for the SOUTHERN DISTRICT OF FLORIDA, at 299 East
    Broward Boulevard, Fort Lauderdale, Broward County,
22  Florida, on Thursday, March 10, 2011, commencing at
    or about 9:30 a.m., and the following proceedings
23  were had:
24
              Reported By:  Priscilla Smith
25

1        APPEARANCES:
2
3

         LAW OFFICES OF KEVIN GLEASON, by:
4              KEVIN C. GLEASON, Esq.
         On behalf of the Petitioning Creditors
5
6    STEARNS, WEAVER, MILLER, WEISSLER, ALHADEFF &
                  SITTERSON, P.A., by:
7              PATRICIA A. REDMOND, Esq.
           On behalf of the Alleged Debtor.
8
9                    - - - - - -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1        THE COURT:  Thank you.  Please be seated.
2   Good morning.
3            In Friendship Airways, we have
4   Mr. Gleason representing the petitioning creditors
5   and Ms. Redmond representing the alleged debtor.
6            MR. GLEASON:  Yes, your Honor.  I
7   apologize for being late.  It took me 25 minutes
8   to get from I-95 to here on Broward Boulevard.
9            THE COURT:  That's sometimes what we get.
10  There was a train?
11           MR. GLEASON:  No.  Better than that.
12  Fire Rescue, with the lights on, blocking two out
13  of the three lanes, and then buses of course, in
14  the only lane that was open.
15           MS. REDMOND:  Your Honor, I got by just
16  before Fire Rescue got there, so I was a little
17  bit more fortunate than Mr. Gleason.
18           THE COURT:  Oh, my.  Well, this is a
19  status conference, and there is a motion by
20  alleged debtor for -- to require posting of a bond
21  under Section 303(e), so why don't we start there?
22           MS. REDMOND:  Your Honor, I was going to
23  ask the Court if we could start at the second
24  matter, because in beginning my remarks, I wanted
25  to apologize to Mr. Gleason and to apologize to

1  the Court for something that happened in
2  connection with depositions which we had scheduled
3  in contemplation of today's hearing on the 303(e)
4  motion to set a bond.
5          Your Honor, we had filed a certificate of
6  service, and we had served the people to be
7  deposed, and we had not, inadvertently, uploaded
8  the order, the deposition notice, so Mr. Gleason
9  did not get it.
10         THE COURT:  Oh, my.
11         MS. REDMOND:  We didn't know this until
12 yesterday, and when we found it out, we
13 immediately wrote to Mr. Gleason.  Only one of the
14 deponents had showed up, and we had taken the
15 deposition and told him we would not use that
16 deposition in any respect as a result of what we
17 did.
18         And we do want to apologize to him and to
19 the Court for that.  We did file a certificate of
20 service, and that is docketed at ECF-41, but the
21 actual notice did not go to Mr. Gleason, and so we
22 really do apologize.
23         I think that three things failed that,
24 usually one of them would have prevented this from
25 happening, and the first is that it is standard

Page 5

1  operating procedure in my law firm to call
2  opposing counsel and get convenient times to
3  schedule depositions.  That failed.
4       The second is, we have really highly
5  skilled people that set these and almost always
6  upload them, and we relied on the fact that it was
7  uploaded and Mr. Gleason had received notice.
8       And third is, what usually happens, is
9  when a client gets a notice of deposition, they
10 will call their lawyer.  That didn't happen.
11      So with the three things converging,
12 there was this error, and we do really apologize
13 for that.
14      THE COURT:  Well, glitches happen, but it
15 sounds as if no damage was done.  Mr. Gleason, do
16 you have any lingering concerns about this
17 problem?
18      MR. GLEASON:  Judge, until I obtain a
19 transcript of Mr. Bulk's deposition and obtain
20 duplicates of the documents that he produced, I do
21 not know whether there was an encroachment on the
22 attorney/client privilege or any other reason
23 which may cause some concerns.
24      But I will ask for those immediately, and
25 I presume that means that this motion for posting

1  of a bond is to be heard another day.  This notice
2  is a 10-minute hearing.
3           MS. REDMOND:  Your Honor, I have some
4  comments on the motion, but what I was going to
5  ask, your Honor, because we recognize it as our
6  burden to show indicia of bad faith for your Honor
7  to post a bond under Section 303(e) of the
8  Bankruptcy Code, therefore we were going to ask
9  the Court to continue this hearing to allow us to
10 take the depositions with notice to Mr. Gleason at
11 mutually convenient times for approximately two
12 weeks.
13          THE COURT:  Okay.  Does that work for
14 Mr. Gleason?
15          MR. GLEASON:  It does, Judge.  And to
16 avoid having to negotiate over this, the
17 depositions were set in Miami, and nobody lives
18 there and the case isn't there, so I would offer
19 to do it in Ms. Redmond's Fort Lauderdale office.
20          And with that -- I actually checked my
21 calendar.  The ones that were unilaterally set for
22 Monday are apparently -- I can move some other
23 things around and attend those, but ---
24          MS. REDMOND:  Your Honor, whatever is
25 set, we will work with Mr. Gleason to get a

1 mutually convenient time, if he has something, and
2 we will provide the transcript at our own cost,
3 because it was our mistake.
4     THE COURT: Thank you.
5     MS. REDMOND: Your Honor, I just do have
6 one point on the bond --
7     THE COURT: Sure.
8     MS. REDMOND: -- that I would like to
9 address on a preliminary basis.
10     I think there is one piece of the bond
11 that your Honor can address today, and your Honor
12 ordered that a bond be placed in order for the
13 petitioning creditors to maintain an interim
14 trustee in place.
15     THE COURT: Right.
16     MS. REDMOND: There was a notice that was
17 filed at ECF-32 that the petitioning creditors
18 would not post a bond. And then the Trustee went
19 out of possession of the assets of these
20 particular debtors.
21     In the meantime, the cost of the trustee
22 is approximately $10,000 that was incurred.
23 Ms. Salkin and Mr. Scott diligently started to
24 proceed, to take possession to do investigations
25 and to meet the parties and things like that.

1          In addition, the alleged debtor has
2    approximately $15,000 of costs in bringing the
3    matter before the Court, when a bond should have
4    been posted in the first instance, before the
5    trustee was ever in place.
6          So I think that, your Honor, on a
7    preliminary basis today, because these are costs
8    that were incurred and they are relatively without
9    dispute and they were occasioned by the
10   petitioning creditors' motion to appoint an
11   interim trustee, could require a bond in the
12   amount of $25,000 subject to a further hearing.
13          THE COURT:  Mr. Gleason?
14          MR. GLEASON:  Judge, that is not set for
15   today.  I don't know how the statement is made
16   that they're relatively uncontested.  Ms. Redmond
17   stood before you the last time, having been in the
18   case for three days; she said that her firm is
19   already up to $25,000.
20          And so part of our discovery is going to
21   be to find out how that number got achieved with
22   an intervening weekend in two business days.
23          But the bond that is sought today by
24   motion is for bad faith.  And oddly enough, it's
25   not accompanied by a motion to dismiss, which is

1   the norm.  And further, oddly enough, the motion
2   does not even recite within it any grounds -- any
3   allegations of bad faith.
4          It only says that the alleged debtor
5   challenges the qualifications of Creditors.  It
6   doesn't say -- the words of bad faith are not
7   mentioned.
8          So as to the 20/20 hindsight bond for the
9   trustee, that's not here.  I don't know of any
10  sort of nunc pro tunc provisions for that, the
11  debtor ---
12         THE COURT:  You're not aware of the rule
13  that requires the posting of the bond,
14  Mr. Gleason?
15         MR. GLEASON:  Judge, in an academic
16  sense, I am aware of that rule.  In the heat of
17  that contest that day, it was not in the forefront
18  of my mind.
19         The Court did ask all parties present
20  whether there were any other matters that needed
21  to be brought to the Court's attention.  It didn't
22  occur to me, and debtor's counsel present at the
23  hearing also didn't bring it up.
24         So I think, at the very best, that
25  request should be deferred, pending later

1  determination in the case.  Obviously as the case
2  goes forward and it's administered, that's a
3  standard administrative expense.
4              THE COURT:  Ms. Redmond.
5              MS. REDMOND:  Your Honor, I think the
6  25,000 is a minimal amount, and it just provides
7  protection to the estate in the event that there
8  is a bad faith finding by your Honor that the
9  trustee was put in place -- and the trustee will
10 be filing a fee application through Mr. Scott.
11 The trustee sent representatives out to the
12 airport to watch what was going on and came to
13 court on -- on the last hearing with respect to
14 the interim trustee bond.
15             And your Honor, there is costs that were
16 incurred.  I think those are clear costs, and I
17 think your Honor could set a bond initially in
18 that amount today, just to protect the parties,
19 for what we know today.
20             We know the interim trustee was
21 requested; we know that when your Honor required a
22 bond, the petitioning creditors filed a notice of
23 no bond.  And so we know that that damage
24 occurred, and it's approximately -- the 15,000 is
25 something less, obviously, than what we had

1  incurred in the general case. It was what we had
2  incurred in connection only with the interim
3  trustee motion.
4       THE COURT: Thank you.
5       The requirement of the posting of a bond
6  under Rule 2001(b) is something that did not come
7  to my attention at the hearing, but it is a clear
8  rule requirement for the appointment of an interim
9  trustee. Asking for an interim trustee and
10 getting an interim trustee appointed are steps
11 that are consequential. The rule requires the
12 posting of a bond.
13      I directed that a bond be set in the
14 amount of $500,000, based on the proffers that
15 were made to me at the second hearing in this
16 case.
17      To find out now that the costs of the
18 appointment of an interim trustee in this case
19 amount to $25,000 or something in that vicinity,
20 and an unwillingness on the part of the
21 petitioning creditors to post such a bond, strikes
22 me as concerning.
23      MR. GLEASON: Your Honor, I am going to
24 interrupt at this point. This was not brought to
25 me before today. I did not walk in here with

1  authority to agree to post a bond.
2         I may be able to get that authority, but
3  the $500,000 bond priced it out of the price range
4  of all the claims put together, of all the
5  petitioning creditors put together.  Their claims
6  were less than the amount of the bond.  That put
7  the trustee out of business because the
8  petitioning creditors couldn't afford it.
9         But as far as this 25,000, if your Honor
10 would like to reserve, I will ask for authority
11 and inform the Court whether I have authority to
12 post the bond.
13        THE COURT:  I am going to direct the
14 posting of that bond, Mr. Gleason, in the amount
15 of $25,000, to protect the estate from expenses
16 that were reasonably incurred as a direct result
17 of the request of the petitioning creditors.
18        MR. GLEASON:  So your Honor, it's a
19 2001 ---
20        THE COURT:  It's a 2001(b) bond.
21        MR. GLEASON:  (B) bond.  And the
22 deadline, please?
23        THE COURT:  Ms. Redmond, do you have a
24 suggestion?
25        MS. REDMOND:  Your Honor, the last time

1   we were on -- we could do it tomorrow by
2   5:00 p.m.
3           THE COURT:  Mr. Gleason?
4           MR. GLEASON:  It's going to be extremely
5   difficult, Judge.  I need till at least Tuesday.
6           THE COURT:  Okay.  I will give you until
7   Tuesday March 15th for the posting of that bond.
8   The consequences of not posting that bond are
9   something that I will consider if that happens.
10  But March 15th at five o'clock.
11          Now, when shall we have the hearing on
12  the motion for the 303(e) bond?
13          MS. REDMOND:  Your Honor, Mr. Gleason
14  knows his calendar.  I know I am here the entire
15  week of two weeks from now, which is the week of
16  the 21st.
17          THE COURT:  Do you think the two venous
18  adversaries are probably going to -- going to
19  collapse?  Nothing yet?
20          MR. HOWELL:  Everything has been pushed
21  to the following Thursday.
22          THE COURT:  Then let's do it 9:30 on the
23  24th.  Does that work for you, Mr. Gleason?
24          MR. GLEASON:  It does, your Honor, but
25  for the fact that the motion on its face would

1  have to be denied today, because it doesn't even
2  allege bad faith, and I found no cases where there
3  was a bond required when there wasn't a motion to
4  dismiss pending that made out a case for bad
5  faith.
6          We don't have anything near the type of
7  fact pattern here that are in the bad faith cases.
8  Starting with state court litigation, then having
9  one of the parties in the state court litigation
10 putting the other into an involuntary, that sort
11 of thing.
12         We just have some little creditors who
13 weren't paid, and we don't even have an answer yet
14 that even denies the three allegations necessary
15 for an involuntary, so I think it's out of order
16 to be talking about a bad faith bond when we don't
17 have an answer or a motion to dismiss yet, and
18 done no discovery.
19         MS. REDMOND:  Your Honor, we will be
20 ready in two weeks on a date that Mr. Gleason --
21 is convenient and, you know, we will take a look
22 at the motion, and if we need to amend it, we will
23 amend it within the next day.
24         THE COURT:  Okay.  We'll have that
25 hearing on this motion on March 24th, and that's

1   of course without prejudice to the arguments you
2   are making, Mr. Gleason.
3           MR. GLEASON:  Yes, your Honor.  The time
4   on the 24th, please?
5           THE COURT:  9:30.
6           MR. GLEASON:  And is that evidentiary?
7           THE COURT:  Yes.
8           MS. REDMOND:  Yes.
9           MR. GLEASON:  Thank you, your Honor.
10          THE COURT:  So Ms. Redmond, would you
11  give me two orders:  One setting the 2001(b) bond,
12  and the other setting a hearing on the 303(e)
13  bond.
14          MS. REDMOND:  Thank you, your Honor.  I
15  will.
16          THE COURT:  Thank you very much.
17          MR. GLEASON:  Otherwise, Judge, we were
18  just set for status, and I think, with your
19  Honor's recitations of the record and what we have
20  said, we have pretty much got the status.
21          THE COURT:  Well, is there anything else
22  that I should know about the status of the case?
23          MS. REDMOND:  Your Honor, in response to
24  the involuntary, we will be filing a motion to
25  dismiss for bad faith, rather than an answer, and

1  we will -- I think the last date is the 15th, but
2  we will endeavor to have that filed by the
3  beginning part of next week.
4          THE COURT: Okay. We'll see what comes.
5  Thank you very much.
6          MR. GLEASON: Thank you, Judge.
7          MS. REDMOND: Thank you, your Honor.
8          MR. GLEASON: Your Honor, if I may, I was
9  on a telephone link with Judge Kimball. I am
10 going to resume that, if I might.
11         THE COURT: We're adjourned.
12         (Thereupon, the hearing was concluded at
13         10:12 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE OF REPORTER

STATE OF FLORIDA:

    SS.

COUNTY OF BROWARD:

    I, PRISCILLA SMITH, Court Reporter, do hereby certify that the motion in the case of IN RE: FRIENDSHIP AIRWAYS, INC., pending in the above-styled court, was heard before the Honorable JOHN K. OLSON, as Judge, on March 10, 2011, and that the foregoing pages, numbered from 1 to 16, inclusive, constitute a true, correct, and complete transcription of my shorthand report of the proceedings.

    IN WITNESS WHEREOF I have hereunto affixed my hand on March 21, 2011.

_____
Court Reporter