1         UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
2

3  IN RE:                        CASE NO. 11-14250-BKC-JKO
4  FRIENDSHIP AIRWAYS, INC.,
5       Debtor.
   _____/
6

7

   EXPEDITED MOTION OF THE ALLEGED DEBTOR FOR AN ORDER
8   REQUIRING THE PETITIONING CREDITORS TO FILE A BOND
   PURSUANT TO 11 USC SECTION 303(e) FILED BY THE DEBTOR
9     (34); EXPEDITED MOTION TO STRIKE [1] INVOLUNTARY
        PETITION (CHAPTER 7), [54] NOTICE OF TAKING
10   DEPOSITION, [70] NOTICE OF TAKING DEPOSITION, IN
   ADDITION TO MOTION FOR PROTECTIVE ORDER FILED BY THE
11     DEBTOR AND INTERESTED PARTY FRIENDSHIP AIRWAYS
       LEASING, INC. (71); ORDER TO SHOW CAUSE (78)
12

13                    March 24, 2011

14

15         The  above-entitled  cause  came  on for
16  hearing    before   the   HONORABLE  JOHN K. OLSON,
17  one of the Judges of the  UNITED  STATES BANKRUPTCY
18  COURT, in and for the SOUTHERN DISTRICT OF FLORIDA,
19  at 299 East Broward Blvd., Fort Lauderdale, Broward
20  County,  Florida  on  Thursday, March  24,  2011,
21  commencing at or about 9:30 a.m., and the following
22  proceedings were had:
23

24                  Reported By:  Margaret Franzen
25

```
 1                    APPEARANCES:
 2
 3          STEARNS WEAVER MILLER WEISSLER
                ALHADEFF & SITTERSON, by
 4        PATRICIA A. REDMOND, ATTORNEY-AT-LAW
          ILEANA CRUZ-BONGINI, ATTORNEY-AT-LAW
 5            on behalf of the Alleged Debtor
 6
               KEVIN C. GLEASON, P.A., by
 7              KEVIN C. GLEASON, ESQUIRE
          on behalf of the Petitioning Creditors
 8
 9                    ALSO PRESENT:
10
                    CHRISTOPHER BEHNAM
11                      BETH BEHNAM
                      MICHAEL MOULIS
12                       ONNO BULK
                       MR. PETERSON
13                      MR. DOANE
          WILLIAM HOWELL, Judge Olson's Law Clerk
14          CHRISTINA ROMERO, Courtroom Deputy
15
                       - - - - - -
16
17
18
19
20
21
22
23
24
25
```

1     THE COURT:  Let me take appearances,
2  please.
3     MR. GLEASON:  Good morning, your Honor.
4  May it please the Court?  Kevin Gleason for the
5  petitioning creditors.
6     THE COURT:  Thank you, Mr. Gleason.
7     MS. REDMOND:  Good morning, your Honor.
8  Patricia Redmond for the alleged debtor.  I'm joined
9  by my colleague, Ileana Cruz-Bongini.
10    THE COURT:  Thank you.
11    MS. REDMOND:  Also Mr. Christopher Behnam
12  and Ms. Beth Behnam are here.
13    THE COURT:  Thank you very much.
14       There are three motions before us this
15  morning.  It seems to me that the order in which
16  to take them first is the order to show cause.
17  I entered an order to show cause in this case
18  sua sponte because no bond was posted within the
19  time that Mr. Gleason asked for a bond to be
20  posted, and so far as I'm aware, no bond has been
21  posted.
22       Mr. Gleason, why was no bond posted?
23       MR. GLEASON:  Your Honor, the largest
24  creditor with an interest in both cases, being the
25  Leasing creditor, was the most logical to post a

1  bond, and has attempted to post a bond, has been
2  denied by three bonding agencies, and the cause of
3  the denial, and he's here to testify, I'm proffering
4  the testimony of Mr. Doane, Mr. Doane would testify
5  that he attempted with three separate bonding
6  agencies to obtain a $25,000 bond, that he was denied
7  due to negative reports on his credit, which are
8  directly due to this debtor, these debtors not paying
9  him.
10            So his ability to post a bond was
11  negatively impacted by this debtor's -- these
12  debtors' prepetition actions.
13            Mr. Onno Bulk was not a petitioning
14  creditor at the time that the trustee was
15  appointed, and, in fact, came in just about the
16  time that the -- I think the day before the
17  notice was posted that the bond would not be
18  posted.
19            THE COURT:  That was the -- that was the
20  bond, the first bond.
21            MR. GLEASON:  Yes, the half million dollar
22  bond.
23            THE COURT:  Yes.  Why has no $25,000 bond
24  been posted, Mr. Gleason?
25            MR. GLEASON:  Well, I'm going right through

1  the petitioning creditors and explaining each one,
2  your Honor.
3          Mr. Bulk is unemployed and does not
4  have the ability to post a $25,000 bond.
5          Mr. Alashahi is in Colombia and has
6  been in Colombia since last week, and will not be
7  returning until very late this week or very early
8  next week.  I had no way to contact him while he
9  was out of the country, so he doesn't even know
10 about it.
11         And Mr. Peterson of Peterson Aircraft
12 is here and also does not have the wherewithal to
13 post a $25,000 bond.
14         So we don't have -- I'm sorry,
15 Mr. Moulis has appeared.  He testified two days
16 ago that he would have the ability to post a
17 bond, but, again, at the time it was anticipated
18 Mr. Doane would be posting the bond and
19 Mr. Doane's efforts were just frustrated, where
20 he just gave up as of the very same day that
21 Mr. Moulis testified.
22         And so I can't speak for Mr. Moulis
23 about whether or when he would be able to post a
24 bond, but he is present, and I believe I've hit
25 all of the petitioning creditors.

1           THE COURT:  Mr. Gleason, I'm asking you as
2    an officer of the Court, did you discuss the bond
3    requirements of Rule 2001(b) or of Section 303(e) of
4    the Bankruptcy Code before you filed the voluntary
5    petitions on behalf of your now four creditor
6    clients?
7           MR. GLEASON:  No, your Honor.
8           THE COURT:  You did not?
9           MR. GLEASON:  I did not.
10          THE COURT:  So you made no -- you did not
11   make your clients aware that a bond would be required
12   if a trustee were sought on an interim basis, and
13   probably could be, and would be, required under
14   Section 303(e)?  You had no discussion with your
15   clients about that?
16          MR. GLEASON:  That's correct.
17          THE COURT:  Utterly reckless, Mr. Gleason,
18   and probably malpractice, and if your clients suffer
19   damages as a result of what I'm going to do here
20   today, they ought to sue you for failing to do the
21   most basic preparation of a client before filing an
22   involuntary bankruptcy petition.
23          You caused a trustee to be appointed.
24   You misled me by not pointing out to me that a
25   bond had to be posted.  I've never had a trustee

1  requested on an interim basis before in an
2  involuntary case.  You misled me and you
3  apparently misled your clients.
4        And if you didn't do that, what was the
5  good faith investigation that you undertook prior
6  to filing the involuntary bankruptcy petition of
7  your clients' ability to do that which would be
8  required to get the relief you sought?
9        MR. GLEASON:  I did not investigate the
10 financial condition of my clients.  I investigated
11 the public records to make sure that I was dealing
12 with authorized representatives, and your Honor
13 couched the question in terms of discussion.  There
14 is a letter that was signed by the petitioning
15 creditors, which discusses the possibility of
16 sanctions for bad faith filings, but that letter does
17 not go into detail about bonding requirements.
18       THE COURT:  Were you aware of Rule 2001(b)
19 before you filed the bankruptcy petition?
20       MR. GLEASON:  Yes, your Honor.
21       THE COURT:  Why did you not bring it to my
22 attention?
23       MR. GLEASON:  Judge, as I mentioned in the
24 last hearing, the -- there's basically excitement of
25 the moment.  When the Court said, well, is there

1  anything else I need to consider, you know, we
2  brought this motion not to protect, particularly,
3  assets of the estate, but I was informed that the
4  airplanes were being flown in an unsafe manner, and
5  that was what prompted the emergency filing of the
6  appointment of a trustee.
7        And, you know, the case was filed on
8  a -- on a Friday afternoon of a long weekend and
9  the motion was filed first thing Tuesday morning.
10        THE COURT:  With incompetent due diligence
11 and not warning your clients of what the consequences
12 of seeking the interim trustee or, apparently, of
13 filing a bankruptcy petition in an involuntary -- on
14 an involuntary basis.
15        MR. GLEASON:  Judge, the second comment is
16 completely unfair.  The written disclosure to the
17 clients explains what 303 is about and the potential
18 consequences, if the Court dismisses the case and
19 finds that it was a bad faith filing by the
20 petitioners.
21        THE COURT:  But you don't warn them that at
22 the front end they might be responsible for posting
23 bonds, do you?
24        MR. GLEASON:  I did not.
25        THE COURT:  Why?

1          MR. GLEASON: I don't have a particular
2    explanation for that, but, your Honor ---
3          THE COURT: Malpractice, Mr. Gleason,
4    malpractice. Your clients, if they were unaware of
5    the bonding requirement, that's their -- that's too
6    bad for them.
7          Right now I'm inclined to hold them all
8    in contempt except, possibly, Mr. Bulk.
9          MR. GLEASON: It's my understanding, your
10   Honor, that one cannot be held in contempt for not
11   doing what one is not capable of doing.
12         THE COURT: Well, if Mr. Peterson wants to
13   tell me all about his income, that's fine; if
14   Mr. Doane wants to tell me all about his income and
15   assets, that's fine; if Mr. Moulis wants to do the
16   same, I suppose that's fine, and I will consider
17   those things in due course. I would prefer that
18   other people do the investigation into the finances
19   so that I am not conducting discovery in the
20   courtroom.
21         Is there anything else you want to tell
22   me in connection with the motion to dismiss that
23   is based -- or to strike, rather, that is based
24   upon the failure to comply with the order that
25   directed the posting of a $25,000 bond?

1    MR. GLEASON: Based in part on that, your
2 Honor. It's not the entire basis. Most of that
3 motion was dedicated toward the fiction that the
4 petitioning creditors have been engaging in discovery
5 abuses.
6    THE COURT: Well, Mr. Gleason, I am not
7 particularly interested today in discovery abuses. I
8 am interested in upholding the orderly processing of
9 cases in Bankruptcy Court, and when somebody
10 recklessly files a bankruptcy petition and recklessly
11 asks for the appointment of an interim trustee
12 without even the -- apparently, you say, without the
13 ability to post a bond, and without posting a bond
14 within the time frame that you suggested, I'm just
15 appalled.
16    MR. GLEASON: If the Court will recall, the
17 Court was inclined to set it on 24 hours and I said,
18 I couldn't possibly do it that soon, I would need at
19 least until the next week.
20    THE COURT: And you gave me the date of the
21 15th.
22    MR. GLEASON: Yes, and without having had
23 the opportunity to consult with the clients in
24 advance.
25    THE COURT: And it is now the 24th, which

1  is nine days later, and no bond is posted.  So I
2  could have set a date in the perpetual future, I
3  suppose, for you to do it.
4          MR. GLEASON:  The suggestion, your Honor,
5  that there was no due diligence is -- you know, I'm
6  not here to litigate with your Honor, but your Honor
7  has gone way beyond any evidence that's in the record
8  regarding what I did prior to filing the involuntary
9  petition, insofar as verifying the condition of the
10 aircraft, which I saw with my own eyes.
11         THE COURT:  Mr. Gleason, that's all well
12 and good, it's also no more than half the equation.
13 Your clients were not warned of the requirements for
14 the filing of an involuntary, and so far as I can
15 tell, we had another example of ready, fire, aim, and
16 I'm, frankly, appalled.
17         I will continue the hearing on the
18 order to show cause in order for discovery to be
19 taken.  You may sit -- take a seat, Mr. Gleason.
20         MR. GLEASON:  Is there a date, your Honor?
21         THE COURT:  No, not at the moment.
22         Ms. Redmond, I want to hear about the
23 motion to strike.
24         MS. REDMOND:  Your Honor, the motion to
25 strike is based on, as your Honor noted earlier, the

Case 11-14250-JKO   Doc 110   Filed 04/12/11   Page 12 of 19

Page 12

1  failure of the petitioning creditors to post a bond.
2  And your Honor mentioned that you would like someone
3  other than the Court to do the investigation into the
4  petitioning creditors' financial affairs, but your
5  Honor, the Honorable Paul Mannes, who sits in
6  Maryland had a case very similar to this one, where
7  he had ordered the debtor -- the petitioning
8  creditors to post bonds on two separate occasions and
9  they had failed and refused to post those bonds.
10            As a result of that, he found that it
11 was appropriate to dismiss the case, finding that
12 an involuntary petition is a serious matter and
13 can have serious consequences with respect to the
14 alleged debtor, and that that's the reason there
15 is a bonding requirement, and because the
16 petitioning creditors failed and refused, he
17 found that dismissal was appropriate.
18            What he did in that case -- the case is
19 Lydee Zoo (phonetic), it's at 2010 Westlaw
20 4259553.
21            THE COURT:  2 -- I'm sorry, 425 --
22            MS. REDMOND:  4259553.
23            THE COURT:  -- 9553, thank you.
24            MS. REDMOND:  What Judge Mannes did in that
25 case was to dismiss the case with prejudice and

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

1   reserve jurisdiction to determine attorney's fees and
2   costs that could be assessed against petitioning
3   creditors, and to take evidence and to have
4   depositions and discovery with respect to bad faith.
5           And so that's what we would ask your
6   Honor to do today on the motion to strike.  The
7   petitioning creditors have had two opportunities
8   to do something.  They had an opportunity to post
9   an initial bond, they did not do that.  They had
10  an opportunity by the 15th, and as your Honor
11  noted, it's nine days later and Mr. Gleason is
12  standing up here and telling you the petitioning
13  creditors cannot post a bond.
14          The gentleman who he mentioned is not
15  even a petitioning creditor in this case.  He's a
16  petitioning creditor in the Leasing case, so he
17  would have no obligation to post a bond in the
18  other case.
19          Mr. Alashahi is in Colombia.
20  Mr. Gleason doesn't know when he's coming back,
21  that's even more reason why a bond ought to be
22  posted, because we don't know if we'll ever be
23  able to collect in the event that there are
24  damages assessed against him, and Mr. Bulk has
25  said at deposition that he's leaving the country

1  in a couple of weeks and he won't be coming back.
2            So, your Honor, the alleged debtor
3  believes that there's sufficient basis right now
4  because of the disregard for this Court's order,
5  to dismiss the one involuntary proceeding against
6  Friendship Airways, and to reserve, and we'd ask
7  your Honor to do something in addition to that.
8            Your Honor, there has been, at least in
9  deposition, testimony with respect to a third
10 individual who I mentioned in my remarks the
11 first day here, a David Samer, who seems to be
12 involved with each of the petitioning creditors
13 in talking to them before they agreed to be
14 petitioning creditors.
15           If your Honor chooses to dismiss the
16 case with a reserve of jurisdiction to determine
17 damages against the petitioning creditors under
18 both sections of 303(i), we would ask your Honor
19 also to reserve jurisdiction with respect to any
20 third parties who may have colluded with the
21 petitioning creditors in respect of the
22 involuntary.
23           THE COURT:  Thank you.
24           MS. REDMOND:  Thank you.
25           THE COURT:  Mr. Gleason.

1      MR. GLEASON:  The initial bond set by this
2  Court with no evidence was set at half a million
3  dollars and ---
4      THE COURT:  And it was reduced,
5  Mr. Gleason, at a hearing last week -- I'm sorry, two
6  weeks ago on -- exactly two weeks ago on March 10th,
7  to $25,000.  Let's talk about that bond.
8      MR. GLEASON:  Mr. Doane would like an
9  opportunity to explain his efforts, and also what
10 he's willing to do that will take him additional time
11 to satisfy the bonding requirement.  He's present and
12 has asked for an opportunity to take the stand and
13 explain his position to the Court.
14     THE COURT:  I'm not going to take evidence,
15 Mr. Gleason.  This is a straightforward question of a
16 a small bond required of people who include a
17 practicing lawyer, whom you have just volunteered,
18 practicing lawyer, I should add, with a very sketchy
19 sanctions record with the Florida Bar.
20     MR. GLEASON:  Excuse me?  I have no
21 sanctions with the Florida Bar.
22     THE COURT:  No, no, no, Mr. Moulis.
23     MR. GLEASON:  Oh, I'm sorry.
24     THE COURT:  I'm sorry, Mr. Gleason, I
25 certainly didn't mean to suggest otherwise.

1  Mr. Moulis has the financial ability to post a bond,
2  he hasn't, he was ordered to do so.  I don't need to
3  hear evidence.  You volunteered that he has the
4  ability to do so.  I don't need to hear evidence.
5          MR. GLEASON:  I said that he testified to
6  that.
7          THE COURT:  The case -- the involuntary
8  petition against Friendship Airways, Inc. is
9  dismissed -- is stricken and dismissed with
10 prejudice, it may not be refiled by these petitioning
11 creditors.  I reserve jurisdiction for the award of
12 sanctions against the petitioning creditors.  I
13 reserve jurisdiction to consider the award of
14 sanctions against third parties, and that is all that
15 we need to do in the Friendship Airways case.
16         The Leasing case I'll consider if, as,
17 and when issues arise.  There is no 303(e) bond
18 posted in the Leasing case.  I think -- was
19 today's hearing on that, in part, Ms. Redmond?
20         MS. REDMOND:  Yes, your Honor, it was.
21 Mr. Doane is here today and has agreed to be deposed
22 today.  We had not had the opportunity to depose him
23 yet.  So what we would ask the Court to do is
24 continue for a matter of ten days the hearing on the
25 303(e) bond with respect to the Leasing case so that

1  we might take that deposition.  We will take it
2  today.
3              THE COURT:  Okay.
4              MR. GLEASON:  And, your Honor, of course
5  that will require detailed findings and ---
6              THE COURT:  I've made findings,
7  Mr. Gleason, that your clients were ordered to do
8  something, you have told me that at least one of the
9  petitioning creditors has the financial ability to do
10 so, and nine days after the deadline, which was
11 suggested by you for the posting of the $25,000 bond,
12 no bond has been posted.  Those are my findings.
13             I find that the petition -- that the --
14 that the petition should not go forward in this
15 Court because your clients are in contempt of
16 that order.  You testified -- you volunteered
17 that Mr. Moulis, at least, has the ability to
18 post the bond, he has not done so.  This case is
19 dismissed with prejudice.  We will have a hearing
20 on the matter, Ms. ---
21             MS. ROMERO:  April 5th.
22             THE COURT:  April 5th, does that work for
23 you all?
24             MS. REDMOND:  Yes, your Honor.
25             THE COURT:  April 5th at 1:30.  Thank you.

1  Now, let me take up Judge Ray's ---
2           MR. HOWELL:  Judge, who will be
3  submitting the order?
4           THE COURT:  Ms. Redmond, would you prepare
5  a draft order for me, please?
6           MS. REDMOND:  I will, your Honor.
7           THE COURT:  And if you would e-mail it to
8  Mr. Howell in PDF format so that I can work with it?
9           MR. GLEASON:  Your Honor, does that order
10 preclude the petitioning creditors from taking the
11 discovery from the debtor?
12          THE COURT:  Not in the Leasing case, but in
13 the Airways case, yes.  The case is dismissed.
14          MS. REDMOND:  Thank you, your Honor.
15          THE COURT:  Reckless.
16          (Thereupon, the hearing was concluded.)
17
18
19
20
21
22
23
24
25

1
2
3                         CERTIFICATION
4
5  STATE OF FLORIDA:
6  COUNTY OF DADE:
7
8            I, Margaret Franzen, Shorthand Reporter
9  and Notary Public in and for the State of Florida
10 at Large, do hereby certify that the foregoing
11 proceedings were taken before me at the date and
12 place as stated in the caption hereto on Page 1;
13 that the foregoing computer-aided transcription is
14 a true record of my stenographic notes taken at said
15 proceedings.
16           WITNESS my hand this 25th day of
17 March, 2011.
18
19
20      _____
            Margaret Franzen
21      Court Reporter and Notary Public
      in and for the State of Florida at Large
22      My Commission Expires: April 14, 2014
23
24
25